UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DASHA THARPE,<br><br>    Plaintiff,<br><br>v.<br><br>GEORGIA CVS PHARMACY, LLC, CVS PHARMACY, INC., and WEC 99D-6 LLC,<br><br>    Defendants. | CIVIL ACTION NO.<br>1:21-CV-01085-JPB |

## **ORDER**

This matter is before the Court on Georgia CVS Pharmacy, LLC, CVS Pharmacy, Inc., and WEC 99D-6 LLC's ("Defendants") Motion to Exclude Opinions and Testimony of Jerry Birnbach [Doc. 56]. This Court finds as follows:

## **BACKGROUND**

This is a premises liability matter concerning Dasha Tharpe's ("Plaintiff") allegation that she was injured at a CVS Pharmacy store in Montezuma, Georgia, on July 10, 2019. [Doc. 56, pp. 1–2]. Plaintiff is an employee of Hallmark Marketing Company, LLC, ("Hallmark"), and was engaged in a "conversion"—i.e., removing products from another retailer and replacing them with Hallmark products—when a gift card display, also called an "endcap," fell over and hit her.

Id. at 2–3.  Among various other factual issues, the parties dispute why the gift card display fell over.

Plaintiff sued Defendants in the State Court of Gwinnett County on February 11, 2021, seeking to recover under theories of negligence, negligence per se and res ipsa loquitur.  [Doc. 1-1].  Defendants removed the case to this Court on March 17, 2021, on the basis of diversity jurisdiction.  [Doc. 1].

On February 4, 2022, Plaintiff designated Jerry Birnbach as an expert witness "in the fields of retail displays, retail display safety, retail store planning and design, retail industry standards, and the duties and responsibilities of retailers with regard to in-store safety pertaining to retail displays and merchandise."  [Doc. 38, p. 1].  Plaintiff simultaneously filed Birnbach's expert report.  See [Doc. 38-1]. On June 1, 2022, Defendants moved to exclude Birnbach's opinions and testimony for failing to meet the requirements of Rule 702 of the Federal Rules of Evidence and the standard set forth in Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993).  [Doc. 56].  The motion is ripe for review.

## LEGAL STANDARD

When assessing the admissibility of expert evidence, the Court "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable," Daubert, 509 U.S. at 589, and that a testifying expert is qualified "by

knowledge, skill, experience, training, or education," Fed. R. Evid. 702.  To that end, the Court fulfills a gatekeeping role "to ensure that speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation 'expert testimony.'"  Rink v. Cheminova, Inc., 400 F.3d 1286, 1291 (11th Cir. 2005) (quoting McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1256 (11th Cir. 2002)).  The Court assesses the admissibility of expert evidence under a three-prong test:

> Expert testimony may be admitted into evidence if:  (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 562 (11th Cir. 1998) (footnote omitted); see also United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (summarizing these three "basic requirements" as "qualification, reliability, and helpfulness").  "The party offering the expert has the burden of satisfying each of these three elements by a preponderance of the evidence."  Rink, 400 F.3d at 1292.

As to the first element, an expert "may be qualified in various ways," including by "experience in a field."  Frazier, 387 F.3d at 1260.  An expert who

relies on experience for his qualifications "'must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" Id. (quoting Fed. R. Evid. 702 advisory committee's note (2000 amends.)). "After the district court undertakes a review of all of the relevant issues and an expert's qualifications, the determination regarding qualification to testify rests within the district court's discretion." Clena Invs., Inc. v. XL Specialty Ins. Co., 280 F.R.D. 653, 661 (S.D. Fla. 2012).

When considering the second factor, reliability, the Court has "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Chapman v. Procter & Gamble Distrib., LLC, 766 F.3d 1296, 1306 (11th Cir. 2014) (quoting Daubert, 509 U.S. at 597). A number of factors inform whether an expert's opinion is reliable, including "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1341 (11th Cir. 2003); see Frazier, 387 F.3d at 1262 ("The same criteria that are used to assess the reliability of a scientific opinion may

be used to evaluate the reliability of non-scientific, experience-based testimony."). Because each factor may not be relevant in every instance, however, district courts "'have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.'" Frazier, 387 F.3d at 1262 (quoting Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999)); see, e.g., Am. Gen. Life Ins. Co. v. Schoenthal Fam., LLC, 555 F.3d 1331, 1338 (11th Cir. 2009) ("A district court may decide that nonscientific expert testimony is reliable based 'upon personal knowledge or experience.'" (quoting Kumho Tire, 526 U.S. at 150)). That said, "nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., 402 F.3d 1092, 1111 (11th Cir. 2005) (quoting Mich. Millers Mut. Ins. Corp. v. Benfield, 140 F.3d 915, 921 (11th Cir. 1998)).

"The final requirement for admissibility of expert testimony under Rule 702 is that it assist the trier of fact." Frazier, 387 F.3d at 1262. Importantly, "expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." Id. But such testimony "will not help the trier of fact," and will thus be inadmissible, "when it offers nothing more than what lawyers for the parties can argue in closing arguments." Id. at 1262–63; see, e.g., Prosper v.

Martin, 989 F.3d 1242, 1249 (11th Cir. 2021) (holding that expert testimony was unhelpful where "it did not offer anything the jury could not discern on its own").

## ANALYSIS

Birnbach issued a twenty-two-page expert report with eight separate opinions. His opinions are based on "his review of the photographs and videos of the display and the store, the depositions taken in this case and the related workers' compensation matter, all pleadings in this case, the parties' discovery responses, documents produced by the parties as well as by nonparties, and other pertinent documents," in addition to his education, training and experience in the retail industry.[1] [Doc. 38, p. 4]. Notably, Birnbach did not visit the Montezuma CVS or inspect the subject gift card display. [Doc. 53-5, pp. 5–7].

Defendants seek exclusion of all eight opinions and object to Birnbach's testimony on three primary grounds: his opinions are unreliable; his opinions are merely legal conclusions; and/or his opinions are unhelpful because the issues are

---

[1] Defendants briefly note that Birnbach "is not a licensed professional engineer," [Doc. 56, p. 5], but do not otherwise object to his qualifications as an expert in the field of retail safety and design. After a review of Birnbach's curriculum vitae, [Doc. 58-5], and his relevant experience, the Court finds that Birnbach is sufficiently qualified to testify as an expert on the issue of retail safety. He has forty years of experience as a store designer, display designer and retail safety professional, during which time he "was responsible for the display design, specification drawings, manufacturing oversight, [and] coordination of complete display roll outs" for a number of major retailers. [Doc. 56-2, p. 2].

well within the grasp of a layperson. Plaintiff responds to these arguments by emphasizing Birnbach's qualifications and asserting that his opinions will be helpful to the jury. The Court discusses each opinion below.

**1.     Opinion No. One**

Birnbach's first opinion is that Plaintiff "was conducting herself in a safe and normal manner at the time the display fell on her leg, and her actions and/or inactions did not cause or contribute to the event." [Doc. 56-2, p. 9]. Defendants contend that this is a legal conclusion, not an expert opinion, that is based solely on Birnbach's *ipse dixit*. See [Doc. 56, p. 13]. Plaintiff counters that Birnbach's experience in the retail sector qualifies him "to opine that Plaintiff was acting appropriately during the conversion and did not do anything to cause the subject display to be unstable or unsecured." [Doc. 58, p. 13].

This opinion speaks directly to the issue of causation. Finding proximate cause "involves a mixed question of law and fact"; as such, "[i]t requires both fact-finding in the 'what happened' sense, and an evaluation of whether the facts measure up to the legal standard set by precedent." Manley v. Ford Motor Co., 17 F. Supp. 3d 1375, 1382 (N.D. Ga. 2014) (quoting Atlanta Obstetrics & Gynecology Grp., P.A. v. Coleman, 398 S.E.2d 16, 17 (Ga. 1990)). Accordingly, "whether proximate cause exists is generally a question for a jury." Id. Although

an expert's "opinion is not objectionable just because it embraces an ultimate issue," Fed. R. Evid. 704(a), an expert "may not offer legal conclusions," Cook, 402 F.3d at 1112 n.8.  Birnbach's opinion that Plaintiff's actions did not cause or contribute to her injuries amounts to "merely tell[ing] the jury what result to reach," which an expert may not do.  Montgomery v. Aetna Cas. & Sur. Co., 898 F.2d 1537, 1541 (11th Cir. 1990); see, e.g., Bennett v. Target Corp., No. 2:16-CV-5816, 2020 U.S. Dist. LEXIS 2281, at *8, 21 (E.D.N.Y. Jan. 2, 2020) (in a personal injury negligence action, excluding Birnbach's opinions about proximate cause as inadmissible legal conclusions).  The Motion to Exclude opinion number one is therefore **GRANTED**.

**2.     Opinion No. Two**

In his second opinion, Birnbach asserts that CVS "[f]ailed to oversee and properly plan for the conversion, which resulted in a lack of bracing on the gift card display and resulted in the display falling onto [Plaintiff]."  [Doc. 56-2, p. 9]. Defendants argue that this opinion is unreliable—i.e., based on insufficient information—and unhelpful to the trier of fact.  [Doc. 56, pp. 13–15].  Plaintiff contends that this opinion will help jurors understand the issues in this case.  [Doc. 58, pp. 13–14].

Expert testimony is unnecessary "where the jury can decide a disputed issue through the application of common sense or simple logic considering the evidence and testimony presented at trial." Grayson v. No Labels, Inc., 599 F. Supp. 3d 1184, 1190 (M.D. Fla. 2022). The extent of CVS's planning and preparation for the conversion is one such issue, and as such, Birnbach's opinions do not meet Rule 702's requirement that expert testimony assist the trier of fact. See, e.g., Cook v. Wal-Mart Stores E., LP, No. 1:19-CV-00031, 2020 WL 7481781, at *3 (W.D. Va. Dec. 18, 2020) (excluding Birnbach's testimony in a premises liability action because "the case [did] not involve complicated, technical facts or scientific evidence"). Birnbach's report also fails to explain the connection between CVS's preparation (or lack thereof) for the conversion and any inadequate bracing on the gift card display.[2] See Gen. Elec. Co. v. Joiner, 522 U.S. 136, 144 (1997) (permitting courts to exclude expert testimony where "there is simply too great an analytical gap between the data and the opinion proffered"). For these reasons, Motion to Exclude opinion number two is **GRANTED**.

---

[2] The Court does not take issue with Birnbach's opinions concerning the extent of bracing on the display, as detailed in the Court's ruling on opinion number four. See infra section 4. The Court excludes opinion number two to the extent that it pertains to CVS's general planning and preparation for the conversion.

9

### 3.     Opinion No. Three

Birnbach's third opinion states that CVS "was at all times responsible for identifying, addressing, and rectifying or warning of hazardous conditions related to the display" and that "CVS failed to appropriately identify, address, and rectify or warn of the hazard of the unstable and unsafe display." [Doc. 56-2, p. 9]. Defendants oppose this opinion on the grounds that it is a legal conclusion that is more properly posed to the jury during closing arguments. See [Doc. 56, p. 15]. Plaintiff asserts that Birnbach's testimony on this issue "will be helpful as most jurors are unlikely to be familiar [with] the retail industry and specifically conducting and planning for retail conversions." [Doc. 58, p. 17].

Rather than elucidating an issue on which expert testimony is needed to assist the jury, this opinion merely states Birnbach's position that CVS breached a duty of ordinary care. This is a legal conclusion on which expert testimony is both inappropriate and unnecessary. See United States v. Milton, 555 F.2d 1198, 1203 (5th Cir. 1977) ("[C]ourts must remain vigilant against the admission of legal conclusions, and an expert witness may not substitute for the court in charging the jury regarding the applicable law.");[3] see, e.g., Bennett, 2020 U.S. Dist. LEXIS

---

[3] "[D]ecisions of the United States Court of Appeals for the Fifth Circuit . . . handed down by that court prior to the close of business on [September 30, 1981], shall be

2281, at *8 (excluding Birnbach's opinions about whether the defendant "acted negligently in creating a dangerous condition and failing to warn customers of the impending hazard" as inadmissible legal conclusions). The Motion to Exclude opinion number three is **GRANTED**.

4. **Opinion No. Four**

In the fourth opinion, Birnbach asserts that "CVS failed to use any of several well-known methods to stabilize a freestanding endcap display," specifically (1) "the use of an L-bracket to secure the endcap to the adjacent" display, called a "gondola"; (2) "weighing the base to eliminate a tipping of the unit"; and (3) "adjusting the levelers on the front of the display to be lower than the back levelers to bring the center of gravity back and eliminate the possibility of a marginal force sending the display into a forward motion." [Doc. 56-2, p. 9]. Finally, he claims that CVS's failure to use the aforementioned methods "constitutes a departure from industry standards and accepted practices." Id.

Defendants argue that this opinion should be excluded for several reasons that primarily boil down to a lack of reliability. See [Doc. 56, pp. 15–19]. Plaintiff responds that "Birnbach's testimony in this area is necessary to explain to the jury

---

binding as precedent in the Eleventh Circuit." Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981).

why CVS'[s] failure to use any method of stabilization is inconsistent with industry standards." [Doc. 58, pp. 18–19].

The Court is skeptical of the basis for this opinion. Birnbach did not inspect the display in person, and he did not measure or perform any testing on it. [Doc. 53-5, pp. 5–7]. At least one part of this opinion—that CVS should have secured the display with a metal brace—appears to rely on installation instructions from an entirely different display. See [Doc. 56-2, p. 8] (referencing "installation guide instructions from major display manufacturer" that require a metal brace and noting that "[t]his standard stabilizing detail was not utilized by CVS at the time of the conversion installation"). However, an expert may use their experience in the field—such as, here, Burbach's experience designing retail displays—to form a reliable and relevant opinion. See Am. Gen. Ins. Co., 555 F.3d at 1338 (permitting district courts to find nonscientific evidence reliable on the basis of the expert's knowledge or experience). The Court also believes that a lay person is unlikely to be familiar with the methods used to stabilize retail displays and, as such, Birnbach's testimony would be helpful on this issue.

Additionally, the Court is cognizant that "it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." Rosenfeld v. Oceania Cruises, Inc., 654 F.3d 1190, 1193 (11th Cir.

2011) (quoting Quiet Tech. DC–8, 326 F.3d at 1341). Indeed, the Court's gatekeeping role "is not intended to supplant the adversary system or the role of the jury: 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" United States v. Ala. Power Co., 730 F.3d 1278, 1282 (11th Cir. 2013) (quoting Allison v. McGhan Med. Corp., 184 F.3d 1300, 1311–12 (11th Cir. 1999)); cf. Rosenfeld, 654 F.3d at 1193 ("[I]n most cases, objections to the inadequacies of a study are more appropriately considered an objection going to the weight of the evidence rather than its admissibility." (quoting Hemmings v. Tidyman's Inc., 285 F.3d 1174, 1188 (9th Cir. 2002))). Defendants may address any concerns about this particular opinion through these "traditional and appropriate means." Accordingly, the Court declines to exclude Birnbach's statements in opinion number four that CVS failed to use certain methods to stabilize a freestanding endcap display.

Birnbach concludes opinion number four by asserting that CVS's actions departed "from industry standards and accepted practices." [Doc. 56-2, p. 9]. Birnbach does not, however, identify any specific industry standards that CVS

supposedly breached.[4]  Without this information, it is hard to see how Birnbach's testimony would "help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702(a).  Another court excluded Birnbach's opinions where he similarly failed to identify any specific "industry standards" with which the defendant allegedly failed to comply.  Nelson v. Costco Wholesale Corp., No. 3:18-CV-278, 2021 WL 2459472, at *5 (W.D. Ky. June 16, 2021) ("Despite reviewing Birnbach's report, addendum, and deposition, the [c]ourt remains in the dark about how the proffered expert would explain to a jury the facts indicating which standards applied to [the defendant] and whether [the defendant] complied with them."), aff'd, No. 21-5666, 2022 WL 221638, at *6 (6th Cir. Jan. 26, 2022).  The Court will therefore exclude Birnbach's opinion that CVS departed from "industry standards and accepted practices."[5]  The Motion to Exclude opinion number four is therefore **GRANTED IN PART AND DENIED IN PART**.

---

[4] Plaintiff cites Giusto v. International Paper Company, No. 1:19-CV-646, 2021 WL 3603374 (N.D. Ga. Aug. 13, 2021), as support for the proposition that an expert need not identify published or written standards where he relies on his own experience in the applicable field, see [Doc. 58, p. 15].  But in Giusto, the proffered expert did, in fact, identify specific industry standards, which Birnbach did not do here.  See Giusto v. Int'l Paper Co., Expert Report of Frank Ferrell, at 10, No. 1:19-CV-646 (N.D. Ga. Feb. 4, 2020) (describing industry standards for paper mills and citing specific provisions of the United States Code and the Code of Federal Regulations codifying those standards).  Giusto does not help Plaintiff.

[5] Birnbach makes this same assertion (i.e., that some action by CVS failed to comply with unnamed industry standards) in opinions five through seven.  To the extent those

### 5. Opinion No. Five

The fifth opinion posits that CVS "failed to secure the endcap . . . using a ziptie, as required by the manufacturer's instructions for the display." [Doc. 56-2, p. 9]. Defendants contend that this opinion "is within the understanding of the layperson and does not require expert testimony." [Doc. 56, p. 19]. Plaintiff simply claims that "[t]his opinion will help the trier of fact understand the need for the zip-tie and the ramifications of CVS'[s] failure to use it." [Doc. 58, p. 21].

The Court agrees with Defendants that this opinion conveys a concept—compliance with installation instructions—that is well within the grasp of a lay factfinder. See Cook, 402 F.3d at 1111 (excluding expert testimony that "involve[d] no 'scientific, technical, or other specialized knowledge' and offer[ed] nothing 'beyond the understanding and experience of the average citizen'" (first quoting Fed. R. Evid. 702, then quoting United States v. Rouco, 765 F.2d 983, 995 (11th Cir. 1985))). Expert testimony must be helpful to "the trier of fact to understand the evidence or to determine a fact in issue," and this opinion will not serve that purpose. Fed. R. Evid. 702(a). The Motion to Exclude opinion number five is **GRANTED**.

---

opinions make the same statement about a failure to comply with "industry standards and accepted practices," they are excluded for the same reasons the Court has excluded opinion number four, and the Court does not address them further.

### 6. Opinion No. Six

In his sixth opinion, Birnbach states that "CVS failed to conduct bump tests on the subject endcap," which "would have likely revealed the unstable nature of the display." [Doc. 56-2, p. 9]. Elsewhere in the report, Birnbach explains that a "bump test" is "a simple test of a unit's stability in which a person simulates what would happen if a customer or associate were to accidentally strike or contact the display." Id. at 5. According to Birnbach, "[o]ther large retailers such as Walmart and Target require staff members to conduct bump tests of retail displays, and thus, CVS failed to act as similarly situated businesses would under like circumstances." Id. Defendants argue that this opinion should be excluded because it "would confuse the jury and create an unrealistic expectation that CVS needed to adopt policies . . . that are not established industry standard." [Doc. 56, pp. 20–21]. Plaintiff contends that there is an adequate factual basis for Birnbach's opinion and that this testimony will assist the trier of fact. See [Doc. 58, pp. 22–23].

Birnbach's experience in the field of retail safety positions him to testify about a specific retail practice such as a "bump test" and renders this opinion sufficiently reliable. See Am. Gen. Life Ins. Co., 555 F.3d at 1338 (holding that personal knowledge or experience may provide the basis for an opinion's reliability). While a layperson is unlikely to need expert testimony to understand

whether, for example, CVS complied with installation instructions for the display, a juror is unlikely to be familiar with the retail industry practice of a "bump test." This opinion, therefore, would meet Rule 702's requirement that expert testimony be helpful to the trier of fact.  Defendants' concerns about this opinion are appropriately addressed by cross-examination and presentation of contrary evidence, not by excluding it at the outset.  See Quiet Tech. DC-8, 326 F.3d at 1341.  Accordingly, the Motion to Exclude opinion number six is **DENIED**.

### 7.     Opinion No. Seven

In his expert report, Birnbach asserts that "analysis of photographs taken before and after the conversion show that at the time of the incident, the display was positioned atop a box or platform such that [it] was raised off . . . the floor." [Doc. 56-2, p. 5].  He further explains that

> whenever a display is placed atop a box, thereby raising the center of gravity of the display, industry standards require the owner to ensure that the display is stable, for example by conducting a bump test. Here, the display was raised off . . . the ground, but CVS failed to ensure that the display was in a safe and stable condition.

Id.  In his seventh opinion, he states that "CVS failed to properly account for the display being placed atop a box or base" by ensuring its stability through a bump test or with adequate bracing. Id. at  9.  Defendants object to this opinion as unreliable "because it is based on insufficient facts and data" and on a flawed

17

methodology. [Doc. 56, p. 21]. Plaintiff admits that the position of the display is disputed but argues that sufficient evidence supports Birnbach's opinion on this matter. [Doc. 58, pp. 23–24].

The Court has concerns about the reliability of this opinion and about Birnbach's qualifications to provide it. It appears that the basis for Birnbach's opinion is his comparison of two photographs, one from before the conversion and one after, both of which feature the gift card display. See [Doc. 56-2, p. 15]. Birnbach asserts that "[a] computer was used to evaluate the overall height of the displays to determine if a base was utilized under the gift card display." Id. at 7. The photographs that Birnbach used in his comparison were taken at different angles, making it difficult, if not impossible, to reach any reliable conclusions about discrepancies between the two pictures. See id. at 15 (showing Figure 13, comparing photographs of the display before and after the conversion, and Figure 14, analyzing this comparison). Moreover, Birnbach did not explain how he conducted this comparative analysis beyond referencing the use of a computer. And while Birnbach may be qualified as an expert in retail safety—and would thus normally be able to opine about the stability and security of retail displays—he has not set forth any relevant qualifications for using computer software to compare photographs and make accurate spatial measurements. "Daubert requires the trial

court to act as a gatekeeper to insure that speculative and unreliable opinions do not reach the jury." McClain v. Metabolife Int'l, Inc., 401 F.3d 1233, 1237 (11th Cir. 2005).  Birnbach's assertion that the display was on some kind of platform is both speculative and unreliable, and thus his associated opinions are, too.  Consequently, the Court **GRANTS** the Motion to Exclude Birnbach's seventh opinion.

### 8. Opinion No. Eight

Finally, Birnbach asserts that "CVS'[s] failures to properly stabilize the display . . . directly and proximately caused the display to fall onto Plaintiff's leg." [Doc. 56-2, p. 10].  Defendants contend that this opinion "is a conclusion of law regarding proximate cause" and is, in any case, unreliable.  [Doc. 56, p. 24].  Citing Rule 704 of the Federal Rules of Evidence, Plaintiff counters that this opinion is not inadmissible merely because it "embraces an ultimate issue" and that, "[t]o the contrary, experts routinely offer causation opinions based on the facts and their relevant expertise."  [Doc. 58, p. 24].  The Court agrees with Defendant that this opinion is a legal conclusion that must be excluded.  See Cook, 402 F.3d at 1112 n.8.  The Motion to Exclude opinion number eight is **GRANTED**.

## CONCLUSION

For the foregoing reasons, this Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Exclude Opinions and Testimony of Jerry Birnbach [Doc. 56].

**SO ORDERED** this 21st day of February, 2023.

_____
J. P. BOULEE
United States District Judge